**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff,

Case No.

vs.

STONE GALLERY, LLC, WADE B. HANICKER, II, ERICA HANICKER, N.H., a minor, and W.H., a minor,

Defendants.
_________________________________/

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff SOUTHERN-OWNERS INSURANCE COMPANY sues Defendants STONE GALLERY, LLC, WADE B. HANICKER, II, ERICA HANICKER, N.H., a minor, and W.H., a minor, and alleges as follows:

1. This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

2. Plaintiff SOUTHERN-OWNERS INSURANCE COMPANY ("SOUTHERN-OWNERS") is a foreign insurance corporation, incorporated in the State of Michigan, with its principal place of business in Lansing, Michigan, authorized to do and doing business in the State of Florida.

3. Defendant STONE GALLERY, LLC ("STONE GALLERY") is a Florida limited liability company with its principal place of business in Tampa, Florida. STONE GALLERY's members include Sethi Poonam and Datta Anju who are adult individuals residing in Hillsborough County, Florida and citizens of the State of Florida.

4. Defendant WADE B. HANICKER, II ("W. HANICKER") is an adult individual residing in Hillsborough County, Florida and is a citizen of the State of Florida.

5. Defendant ERICA HANICKER ("E. HANICKER") is an adult individual residing in Hillsborough County, Florida and is a citizen of the State of Florida.

6. Defendant N.H. ("N.H.") is a minor individual residing in Hillsborough County, Florida and is a citizen of the State of Florida.

7. Defendant W.H. ("W.H.") is a minor individual residing in Hillsborough County, Florida and is a citizen of the State of Florida.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship among the parties and

the amount in controversy, exclusive of fees and costs, is in excess of seventy-five thousand dollars ($75,000).[1]

9. This action is brought pursuant to 28 U.S.C. §2201(a), which provides for this Court to adjudicate a party's rights and other legal relations in an actual controversy.

10. Venue is proper in this Court pursuant 28 U.S.C. §1391 because all defendants are residents of the State of Florida and all defendants reside in this district, the underlying litigation addressed herein was brought in this district, and all matters concerning the causes of action alleged in the underlying litigation arose in this district.

11. All conditions precedent to this action have been performed by SOUTHERN-OWNERS or have otherwise occurred, been waived, discharged or legally excused.

12. At all times material hereto SOUTHERN-OWNERS insured STONE GALLERY under a Tailored Protection Policy, including Commercial General Liability Coverage (the "Policy"). True and correct copies of the Policy with

---

[1] As more thoroughly set forth herein, the subject claims against STONE GALLERY are for substantial damages based upon, arising from, and/or related to W. HANICKER contracting lung disease. The monetary value of the object of the suit against STONE GALLERY from the perspective of W. HANICKER, as well as E. HANICKER, N.H., and W.H. (his wife and children), far exceeds $75,000. In addition, the subject policy provides a $1,000,000 or $2,000,000 per occurrence limit (depending on the policy period), and SOUTHERN-OWNERS' costs for providing a defense also will exceed $75,000.

effective dates of December 26, 2019 through December 26, 2025 are attached hereto and made a part hereof as Composite Exhibit "A".

13. At all times material hereto SOUTHERN-OWNERS also insured STONE GALLERY under a Commercial Umbrella policy (the "Umbrella Policy"). True and correct copies of the Umbrella Policy with effective dates of December 26, 2019 through December 26, 2025 are attached hereto and made a part hereof as Composite Exhibit "B".

14. W. HANICKER, E. HANICKER, N.H., and W.H. (collectively the "Underlying Plaintiffs") filed suit against "STONE GALLERY LLC (DBA STONE WAREHOUSE USA)", as well as other defendants, in case number 2025-CA-005019 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Underlying Action").

15. The current operative pleading in the Underlying Action is the Second Amended Complaint for Personal Injury (the "Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached hereto and made a part hereof as Exhibit "C".

16. In the Underlying Complaint the Underlying Plaintiffs allege, among other things:

- "Plaintiff Wade Hanicker ("Wade") was exposed to Defendants' stone products, slabs or blocks made from natural stone including basalt, dolomite, granite, limestone, marble, onyx, porcelain, quartzite, sandstone, serpentine, and travertine (together referred to as "Stone

Products') and Defendants' artificial stone products, slabs or blocks made from artificial stone also called agglomerate, agglomerated stone, conglomerate, engineered stone, manufactured stone, quartz, reconstituted stone, and synthetic stone contained silica (together referred to "Engineered Products")." (Par. 2)

- "On present information and belief, with investigations and discovery ongoing, Plaintiffs and their counsel, to whom questions are posed, currently contend that **Wade was exposed to and inhaled stone dust containing silica and other toxins and carcinogens**, as well as engineered stone dust containing respirable crystalline silica (including quartz and cristobalite), metals (including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium) and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene)." (Bold emphasis added) (Par. 3)

- From his work handling the products of STONE GALLERY, as well as of the other defendants in the Underlying Action, W. HANICKER developed lung disease. (Par. 4)

- STONE GALLERY and the other defendants in the Underlying Action "are manufacturers, suppliers, sellers, brokers, contractors, importers, and/or distributors of artificial and/or natural stone slab and/or block materials that require fabrication prior to installation as countertops typically for kitchens and bathrooms". (Par. 11)

- W. HANICKER worked as a fabricator, installer, and similar roles with respect to the subject products from 2009 through the "present". (Pars. 54-64)

- W. HANICKER "was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens". (Bold emphasis added) (Par. 66)

- "**As a direct and proximate result of his exposure to silica, metals and other toxins** within said stone products manufactured, distributed, supplied, contracted, and/or brokered by Defendants, Wade, developed lung disease…" (Bold emphasis added) (Par. 67)

- "**As a direct and proximate result of his exposure to silica, metals and other toxins** within Defendants' said stone products manufactured,

distributed, supplied, contracted, and/or brokered by Defendants, Wade, has had to receive substantial medical treatment…" (Bold emphasis added) (Par. 68)

- D. HANICKER did not realize he had sustained any injury until October 29, 2024. (Par. 79)

17. In connection with the Underlying Action SOUTHERN-OWNERS is providing a defense to STONE GALLERY. However, as a matter of law, SOUTHERN-OWNERS' provision of said defense does not estop it from raising coverage issues, both as to defense and indemnity. Furthermore, prior to filing this action, SOUTHERN-OWNERS informed STONE GALLERY that it questions whether there is any coverage for the Underlying Action, including by letter to STONE GALLERY's counsel dated February 23, 2026, a true and correct copy of which is attached hereto and made a part hereof as Exhibit "D".

18. Without waiving any other potentially relevant terms and conditions of the Policy, in support of the relief requested herein SOUTHERN-OWNERS specifically advances the Insuring Agreement of the Policy, including the definitions of "bodily injury", "occurrence", "pollutants", and "suit", along with the exclusions and exclusionary endorsements set forth below.

19. The Policy includes Exclusion f. which, as modified by the Total Pollutions Exclusion Endorsement pertaining to the Commercial General Liability Coverage, provides as follows:

Exclusion f. under Paragraph **2. , Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

20. The Policy also includes the Silica or Silica-Related Dust Exclusion which (as to the Commercial General Liability Coverage) provides as follows:

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

21. The Umbrella Policy also contains an Insuring Agreement with the same or substantially similar definitions, exclusions, and exclusionary endorsements, including, without limitation, the definitions of “bodily injury”, “incident”, “pollutants”, and “suit”, as well as Exclusions G. and J. as modified by the Silica Or Silica-Related Dust Exclusion and/or Total Pollution Liability Exclusion.

22. Defendants contend that SOUTHERN-OWNERS' obligations pursuant to the Policy and/or the Umbrella Policy apply to the Underlying Action.

23. SOUTHERN-OWNERS, on the other hand, contends that the Underlying Action does not fall within the general coverage grant of the Policy and/or the Umbrella Policy (*i.e.* does not fall within the Insuring Agreement) and/or coverage is entirely precluded by the above-referenced exclusions, individually or cumulatively.

24. As such, a genuine dispute exists between the parties as to whether SOUTHERN-OWNERS provides coverage, and there is therefore a present controversy between the parties as to this issue. Because of the present controversy, SOUTHERN-OWNERS is in need of declaratory relief and is without an adequate, certain, prompt or complete remedy that would be as efficient to attain the ends of justice in its prompt administration as would the relief requested herein.

25. As there is a bona fide, present, and practical need for a declaration of rights between the parties, and as such a declaration deals with present, ascertainable facts in controversy, and as the parties to this action have a present and adverse interest in the subject matter hereof, SOUTHERN-OWNERS respectfully seeks this Court's declaratory judgment as to its rights, duties, and

obligations under the Policy and/or Umbrella Policy related to or arising from to the Underlying Action.

**WHEREFORE**, SOUTHERN-OWNERS respectfully requests that this Honorable Court declare that there is no coverage for STONE GALLERY under the Policy and/or the Umbrella Policy for defense and/or indemnity, in whole or in part, for the Underlying Action and further requests costs of this action and such other and further relief deemed appropriate by this Court.

Dated this 29th day of September, 2026.

CAMPBELL TROHN
TAMAYO & ARANDA, P.A.

*/s/ William S. Chambers IV*

WILLIAM S. CHAMBERS, IV
Florida Bar No. 29793
B.Chambers@cttalaw.com
J.Bintliff@cttalaw.com
P.O. Box 2369
Lakeland, FL 33806-2369
(863) 686-0043
(863) 616-1445 (fax)
Attorney for SOUTHERN-OWNERS